IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 07-20090-02-KHV |
| TONY WASHINGTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On July 28, 2009, the Court sentenced defendant to 300 months in prison.   On June 16, 2015, under Amendment 782 and 18 U.S.C. § 3582(c)(2), the Court reduced defendant's sentence to 236 months in prison.   On April 28, 2020, for lack of jurisdiction, the Court dismissed defendant's motion to modify sentence.   See Memorandum And Order (Doc. #419).   This matter is before the Court on defendant's Emergency Motion For Sentence Reduction Bearing Effect To COVID-19 Pandemic At Federal Prison Oakdale, Louisiana (Doc. #424) and his Motion For Appointment Of Counsel (Doc. #425), both filed June 19, 2020.   On July 15, 2020, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant.   For reasons stated below, the Court dismisses defendant's motion to reduce sentence and overrules his motion for appointment of counsel.

## Factual Background

Defendant currently is confined at FCI Oakdale I, a Bureau of Prisons ("BOP") facility in Oakdale, Louisiana.   As of August 11, 2020, 218 inmates and 32 staff members at FCI Oakdale I had tested positive for COVID-19. See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/

(accessed Aug. 11, 2020).  Seven of the inmates who contracted COVID-19 died, while 208 of the other 211 inmates who tested positive have recovered.  See id.

Defendant states that he suffers from chronic bronchitis, which places him at high risk of contracting COVID-19 and suffering severe illness.

## Analysis

### I.    Motion To Appoint Counsel

Defendant asks the Court to appoint counsel to assist him with his compassionate release motion.  As noted above, pursuant to District of Kansas Standing Order No. 20-8, the FPD declined to enter an appearance or seek representation for defendant from other appointed counsel. Defendant has no constitutional or statutory right to appointment of counsel in the prosecution of a compassionate release motion.  See Coronado v. Ward, 517 F.3d 1212, 1218 (10th Cir. 2008) (no constitutional right to counsel beyond direct appeal of criminal conviction); see also United States v. Campos, 630 F. App'x 813, 816 (10th Cir. 2015) (right to counsel does not extend to § 3582(c)(2) motion).  In determining whether to appoint counsel, the Court considers several factors including (1) the merit of the litigant's claims; (2) the nature of the factual issues raised in the claims; (3) the litigant's ability to present his or her claims; and (4) the complexity of the claims involved.  See Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991).  Applying these factors, defendant is not entitled to counsel.  As explained below, defendant's claim lacks merit. Defendant's claim for compassionate release also is not particularly complex factually or legally. Finally, defendant appears able to adequately present his claim.  For these reasons, the Court overrules defendant's motion to appoint counsel.

## II.     Motion For Compassionate Release

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c). Defendant seeks compassionate release under Section 3582(c)(1)(A) based on the COVID-19 pandemic.

Under the First Step Act of 2018, Pub. Law 115-391 (S. 756), 132 Stat. 5194 (enacted Dec. 21, 2018), the Court may order compassionate release for "extraordinary and compelling reasons."   18 U.S.C. § 3582(c)(1)(A)(i).   The Court may entertain requests for compassionate release only upon a motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A).   Here, because the warden did not respond within 30 days after defendant submitted his request for the BOP to file a motion for a reduced sentence, defendant has satisfied the exhaustion prerequisite to filing a motion for compassionate release.

Under the compassionate release statute, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary

and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A). Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.   U.S.S.G. § 1B1.13 cmt. n.1 (Nov. 1, 2018).[1]   In December of 2018, the First Step Act amended

---

[1]   Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A)   Medical Condition of the Defendant.—
     (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

     (ii)   The defendant is—
       (I)   suffering from a serious physical or medical condition,
       (II)   suffering from a serious functional or cognitive impairment,
       or
       (III)   experiencing deteriorating physical or mental health because of the aging process,

                               (continued . . .)

Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release. See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)). Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request. See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

---

[1](… continued)

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B)  Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

  (C)  Family Circumstances.
   (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.
   (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D)  Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (Nov. 1, 2018).

Here, defendant seeks compassionate release based on his medical condition and the COVID-19 pandemic. Under the policy statement, defendant may establish "extraordinary and compelling reasons" based on a medical condition that is (1) a terminal illness or (2) a serious physical or medical condition, a serious functional or cognitive impairment or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). In addition, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(D). To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)). Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference." Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release. Accordingly, a majority of district courts have concluded that courts may independently determine whether a defendant has established "other" extraordinary and compelling reasons beyond those stated in subsections (A) to (C) of the policy statement, U.S.S.G. § 1B1.13 n.1(D). See United States v. Israel, No. 95-00314-CR, 2020 WL

4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release).   But cf. United States v. Garcia, No. 4:05-cr-40098, 2020 WL 2039227, at *5 (C.D. Ill. Apr. 28, 2020) (First Step Act did not override policy statement because definition of "extraordinary and compelling reasons" does not directly conflict with text of First Step Act). For purposes of defendant's motion, the Court assumes that it independently has authority to determine what constitutes "other" extraordinary and compelling reasons beyond those stated in subsections (A) to (C) of the policy statement.   See United States v. Brown, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6 (S.D. Iowa Apr. 29, 2020) (in addressing defense motion for compassionate release, district court can consider anything, or at least anything BOP could have considered).

Defendant states that he is a "chronic care patient with . . . respiratory d[y]sfunction bronchitis." Emergency Motion For Sentence Reduction (Doc. #424) at 5.  The government correctly notes that BOP medical records do not indicate that defendant suffers from such a condition.  Indeed, the BOP medical records reflect that on multiple occasions during the past year, health care professionals found no indication that defendant suffered from respiratory distress.  Defendant does not dispute that BOP medical records do not document that he suffers from chronic bronchitis or any respiratory ailment.   Defendant maintains, however, that a medical provider whom he visited before he entered BOP custody can document this condition.   While in BOP custody for many years, defendant apparently has shown no symptoms of this condition. Even so, the Court assumes that at some point before defendant entered custody in 2007, a health care professional diagnosed him with chronic bronchitis.

Defendant asserts that his medical condition, combined with the risk of contracting COVID-19, constitute extraordinary and compelling reasons for release.   In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting Extraordinary, Webster's Third International Dictionary, Unabridged (2020)).   Defendant has not shown that he *currently* suffers from chronic bronchitis or any other condition which would place him at a higher risk than the general population to contract COVID-19 or of severe illness or death if he contracts it.   In addition, defendant has not shown that compared to his proposed placement in Moorhead, Mississippi, he faces a heightened or imminent risk of exposure to COVID-19 at FCI Oakdale I.   See United States v. Wright, No. CR TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).

COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.   Defendant's current facility had a significant COVID-19 outbreak in April and May, but presently only three inmates have tested positive for COVID-19.   Defendant tested negative for COVID-19 on May 18, 2020.   After defendant had contact with an infected individual in June, the BOP quarantined him.   On June 16, 2020, defendant tested negative for COVID-19 and was released from quarantine.   The risk that COVID-19 may reemerge at FCI Oakdale I alone cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."   United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

In sum, defendant's medical condition and the ongoing COVID-19 pandemic are not "extraordinary and compelling" reasons that warrant his release under Section 3582(c)(1)(A). Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.  <u>See</u> <u>Saldana</u>, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's <u>Emergency Motion For Sentence Reduction Bearing Effect To COVID-19 Pandemic At Federal Prison Oakdale, Louisiana</u> (Doc. #424) filed June 19, 2020 is **DISMISSED**.

**IT IS FURTHER ORDERED** that defendant's <u>Motion For Appointment Of Counsel</u> (Doc. #425) filed June 19, 2020 is **OVERRULED**.

Dated this 11th day of August, 2020 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge